So there's no misunderstanding. We also appreciate distinguished Washington counsel. I will attempt to be distinguished, Your Honor. Very good. Now, for appellant, are you Mr. Jim Egan for defendant Duarte Cruz? Mr. Egan for Duarte Cruz. And we also have Nicholas Markenburg on behalf of Mr. And Mr. Swanberg? That would be me, Your Honor. Are you going to argue in that order just so I get my notes straight? I believe so, Your Honor. Okay. Including a distinguished counsel. And if you have an understanding on dividing time. Judge, what we thought we'd do is to try and divide it up five minutes, five minutes, five minutes, and five minutes in the whole. Okay. Just try to manage it yourself. And that's fine. Any way you want to split it. And then for the government, we have Ms. Bolton. Thank you. Thank you. Okay. Please proceed, Mr. Egan. Thank you, Your Honor. The defendant Duarte Cruz has raised three assignments or issues for consideration by the court. The first is the issue on Miranda rights. The agent that arrested Mr. Duarte Cruz indicated that he read the Miranda rights to him using a form for the Drug Enforcement Administration. And that at the end of that rights, he obtained from Mr. Duarte Cruz the admission, yes, I understand the rights. But never asked Mr. Duarte Cruz if he, in fact, waived those rights, never got an answer to that. In fact, Mr. Duarte Cruz, after the first reading of the rights at the arrest on the highway, only remained silent, didn't say a thing. It is the position of Mr. Duarte Cruz that you cannot continue forward with a defendant who understands the rights as well as the panel. Unless you also obtain a waiver of those particular rights. Do you have a case that says that when rights are read to someone and they say they understand them, that they have to also say they waive their rights? I don't know of an actual case that says that waiver as such is actually required. But the case that I cited for the court in my briefing was Garibay, which indicated that the waiver of a constitutional right is something that has to actually be very carefully achieved and arrived at. What the agent did in this particular case in the face of Mr. Duarte Cruz's silence was to ask, continue to ask questions. He asked him, what's going on here? What are you guys doing? Where are you going? Continued to receive no answer whatsoever. And that, in the argument of Duarte Cruz, is at least an implicit exercise of his right. Are you familiar with our recent decision in Rodriguez-Preciado? I am not, Your Honor. It appears that that argument is completely foreclosed by that case. It was decided on March 4. I'm not familiar with that particular case. And if the court indicates that that is completely foreclosing that particular argument, that a waiver is actually necessary. Well, it says, waivers of Miranda rights need not be explicit. A suspect may impliantly waive the rights by answering an officer's questions after receiving Miranda warnings. And I'm not sure, Your Honor, how that would square with the Edwards case and the Mosley, Michigan v. Mosley case, where they indicate that in those circumstances that an actual, that if, in fact, there is any kind of ambiguity as to whether or not those rights are actually waived, that, in fact, it is the duty of the officer to further inquire as to whether or not the defendant wishes to waive the rights or stand upon the rights. Mr. Egan, even if you're right, aren't we bound by our prior panel's recent ruling? We don't have the authority to tell another panel of this Court to use this great Supreme Court law. You are correct, Judge Taubman. That is correct. And I apologize for not being familiar with the Rodriguez case. You may be able to distinguish it and argue for in-bank re-hearing on an issue if we rule against your client, but our panel is bound by it. Thank you, Judge Gould. The second issue that I wanted to talk about was the issue on the jury verdict that was rendered finding Mr. Duarte Cruz guilty of possessing or actually attempting to distribute 50 grams or more of methamphetamine. And as the panel is, I'm sure, aware, there was no methamphetamine. Nobody found any methamphetamine. There was none that was actually produced. What do we do with the fact that your client testified and admitted under oath that he was participating in a negotiation? In a conspiracy. The sale of five pounds, was it, or five pounds of methamphetamine. Doesn't that meet the language in Apprendi where the defendant has admitted the fact that it doesn't require a jury determination? I think, Your Honor, that the important distinction and the important issue is that for a conspiracy, there has to be an actual intent to deliver. Well, you argued that it was really set up for the robbery of the agent, but by virtue of the jury's verdict, they rejected that defense. So we're still left with your client's admission under oath that he was talking about five pounds. But I think that if the, and of course my defendant testified in front of the jury that I am not in a position to deliver five pounds of methamphetamine, I never could get it. That was all part of your defense, but the jury obviously didn't buy it if they convicted him. But the jury bought, Judge Tallman, was the fact that my client was trying to distribute 50 grams or more. The jury verdict doesn't say five pounds, and that is, I think, the significant issue is. But Apprendi says, other than the fact of a prior conviction, either those facts admitted by the defendant or found by the jury. And the last time I checked, testimony, sworn testimony under oath was an admission. Without any question, Judge. So why doesn't that neatly fit into the Supreme Court's language in Apprendi to foreclose your argument? Because I don't think it's the complete admission. The complete admission is I said to the agents, I want to distribute to you five pounds, but I'm not interested in distributing five pounds. I can't. I have no intent to distribute five pounds. And the jury might well have found that, believed that portion of the defendant's testimony, said he couldn't get it, but instead believed that there was some methamphetamine around, maybe 50 grams or more, but not five pounds. And so based upon, I think that there is a hole in the jury verdict. I see. Now, we've gone well past five minutes. These conspiracy cases are difficult to deal with. If we need to, we may give each side a little extra time. So we'll proceed with Mr. Markey. Yes, Your Honor. Nicholas Markey on behalf of Mr. Lombrado-Bustamante. Your Honors, I believe that in all these cases the issues are going to be essentially the same. And, again, Mr. Lombrado-Bustamante raised the issue of the suppression of the statements. And I think that we'll submit on our written material. But we also challenge the sufficiency of the evidence. And I believe that Mr. Egan has adequately argued that. My next issue comes to sentencing issues, which, in my opinion, I'm in a state of quandary. Mr. Michael and Armando Labrada maintains that the issue of the weight of the drugs is not proven at trial. And we cite amyline as being clearly on point. But don't we have the same problem with Labrada-Bustamante that we had with Mr. Egan's client? I think you're going to have that. Yes, Your Honor. But in this instance. Well, let me ask the question a different way. How do you distinguish your client from the predicament that Mr. Egan's client is in, having testified and admitted before the jury that he was negotiating for 5 pounds of methamphetamine? I think you can by my client also testified. However, there was also testimony of a hand, as Agent Garza testified, that in some of these negotiations there was a discussion about. A hand and five fingers, right? A hand and or five fingers. So there is no clear fact to say. Didn't the agent testify that that was code for 5 pounds of methamphetamine? He did. And the jury convicted. So what are we doing? What I'm saying, Your Honor, is that the jury should have had the issue of weight submitted to them. Why? If the defendant admits to it, what do we need the jury to add? It's imprimatur that it believes what the defendant said? I think in this case. The rules of evidence don't require that. An admission against interest is an admission against penal interest. And it is freely admissible and binding on the defendant. I can see that, Your Honor. Why do we need the imprimatur of a jury? The Supreme Court didn't seem to think so in Apprendi, as long as we had an admission from the defendant. I believe that now with Averland and Booker and Blakely, it all comes into the question now. At the time of sentencing, when Mr. Lombardo went to sentencing, the issue of weight was not raised until the sentencing hearing. There were no objections filed to the weight that was attributed to him in the pre-sentence report. But counsel, Booker does not contemplate that all sentences are invalidated, does it? Your Honor, I believe that, while it does not specifically say that all sentences are, I also believe that most sentences are now implicated under Booker because the guidelines are no longer mandatory, but instead advisory. And in this case, I believe the case should be remanded just on Booker alone because the factors weren't raised in 3553. And on that latter issue, don't we have to – I think Justice Breyer's opinion leaves open the possibilities of plain error or harmless error. And I've understood that we would have to assess if there's a reasonable probability that under a discretionary system, the judge would have sentenced differently. I would agree with that. However, I would also say that there is, in this case, there could have been reasonable probability. If you look at the sentencing transcript, Judge Shea went into the fact that, number one, the weight wasn't established, and number two, that it was a lot of time. Now, had he been allowed to – or had other factors been presented, family circumstances, noncriminal history and things like that, those were not considered by the sentencing court. And I'm saying because of Booker and those cases, that that would be error that was sufficient to change reasonable belief that something would change in Judge Shea's – or in Judge Shea's mind to change his sentence. As the Court notes in the sentencing transcript, Judge Shea was aware that this was a lot of time for Mr. Lombrado, a lot, and he had no prior criminal history. And I think it is reasonable to believe that it would change if remanded under Booker. Okay. I haven't gotten further. Okay. Fine. We'll hear from Mr. Swanberg now. May it please the Court that I'll just try to kind of touch on two additional items that I think are kind of more privy to my client that has already been expounded upon. The first point is in somewhat dealing with what's already been discussed here, but I think my client is in somewhat of a different position, is first off dealing with the issue of the 5 pounds versus the 50 grams, or the relevant conduct that was factored into the guideline sentence that was imposed against him. And one of the things that has been brought up by this Court so far, and I think addressed to some of the other co-defendants, was the fact that the other co-defendants made statements or testified in a way where they admitted that there was talk of 5 pounds, regardless of whether or not they were intending to. Why isn't he bound by those admissions under a Pinkerton theory of liability? Well, Your Honor, I don't think he should be bound under it because I think also the problem here was the evidence. If you go along with that and you want to put, my client didn't testify. We'll start out with that proposition. He didn't testify and there was only one statement that really was attributed to him, which was a post-mortem. But you convicted your client of knowingly participating in a conspiracy to distribute methamphetamine, and there was testimony based upon admissions by co-conspirators that the quantity was 5 pounds of methamphetamine. Why, under the doctrine of United States v. Pinkerton, is your client not bound by those admissions for purposes of imposing this in? Well, Your Honor, the only thing I'd point out is the fact that also there was other evidence as well that was presented by the co-defendants in this case. In fact, it testified that my client really had nothing to do with any of the prior negotiations or anything, that he was unaware of any of the ---- But you raised that defense at trial and the jury by its verdict rejected it. Can you answer my question? Well, I think it's the same. I'm somewhat going through the same poll that Mr. Egan brought up earlier in kind of describing the fact that simply because the jury found him guilty of the 50 grams doesn't necessarily mean they had to find the fact that these parties were able and ready and willing to deliver 5 pounds of methamphetamine. And I think that could even go stronger as an argument as to my client and the fact that he was, I think by all accounts, not involved in any of the prior negotiations at all. Well, there's no requirement in the law, is there, that in order to be found guilty of a conspiracy to distribute narcotics that it has to be found what specific quantity was the object of the conspiracy? All the jury needs to decide in an 846 conspiracy is that there was an agreement to distribute and that the defendant knowingly joined that agreement. There's not even an overt act requirement under 846 conspiracy. Again, Your Honor, I simply thought, no, I don't believe there is, but I would simply fall back. I think the Court somewhat understood the distinction that Mr. Egan was raising earlier, and I won't try to reiterate that. But I think there is a hole between, that the Court could find, between what the jury found on the 50 grams on this and finding and applying it. I'll ask the question one more time and then I'll give up. Okay. Does Pinkerton apply here or not? I can't say. I'm not, unfortunately, with all due respect. You're familiar with the case. Somewhat familiar with that case, Your Honor, but not familiar enough to be able to, I think, fairly reply to Your Honor on what the answer to that is. Okay. The government has a cross appeal. Were you going to address that now? That was the one I was next going to address, Your Honor. Or do you want to come back after the government? I probably would rather come back after the government. I think we'll let you do that. It will be more orderly. Before you leave, counsel, can I ask you a question about the, your challenge to the, to the admission of the drug amounts? Is that harmless error because your client had a statutory prior drug conviction which subjected him to a mandatory minimum term of imprisonment? So why is there any harm? Well, Your Honor, I suppose we're going to be arguing over that. And I think that that's also an argument that has to be taken up with the fact that, I mean, if the government is correct in their assertions of the fact of what the trial court did here in allowing my client to have a safety valve out of this based on attacking a 1997 conviction that otherwise would have prohibited him from having that safety valve, of whether or not that would make the issue of whether or not his guideline sentence without this relevant conduct or whether it would have been less than 20 years would make that issue moot. It would be moot, though, if we agree with the government's position. Well, certainly, Your Honor. Okay. If you're going to give him 20 years, it doesn't matter whether or not, you know. Exactly. All right. Whether or not the guideline sentence was something less than that, it doesn't matter what it was. Okay. All right. Okay. Just for the appellant's purposes, we'll give you a little extra time because Mr. Swanberg is going to have to deal with the government's cross-appeal. And if you need it, we'll give you a little extra time, Ms. Bolden. Thank you, Your Honor. May it please the Court. My name is Jill Bolden, and I represent the government in these as the appellee on the three cases as well as the appellant on the cross-appeal of Mr. Miranda Gallardo. And I'll try to address them in the same order that each of the appellants addressed their cases, starting with Mr. Duarte-Cruz. I agree with the Court's comments first on the issue of the motion to suppress. In that case, we have an initial encounter in the field of the defendant. In fact, both defendants that were questioned and advised of the Miranda rights in the field. All three were advised. Two later made some statements at the DEA offices in Yakima that are the subject of their appeals. In the case of Mr. Duarte-Cruz, he was silent in the field but came back to the offices and then was reminded of his rights. And the court, the district court found that. Reminded of the rights that were advised in the field and asked questions based on that reminder. He acknowledged that he understood, remembered the rights that he was advised of, and then was asked questions. And he indicated he wanted to answer the questions. And then this Court, as this Court pointed out, Rodriguez-Preciado case, there doesn't need to be an express or written form of a waiver of Miranda. An indication in this case by the defendant that he was willing to answer questions and then, in fact, in response to questions, answering them is a clear indication that he understood his rights and was willing to waive them. On the issue of the five pounds as a basis for the sentencing, and that applies, I think, to all three defendants, though a little bit differently. With regard to the first two, both defendants admitted in their trial testimony and we agree with the Court's comments that, in fact, testimony at trial is an admission that can be freely used against a defendant for the purposes of sentencing. And I think we went through kind of three different legal standards as this trial began and progressed and then we got into the appeal. When we were in trial, we were faced only really with the Apprendi issue, which we think is still good law under the current status of the law. Apprendi, which says that you can't sentence beyond the statutory maximum, which if we take it outside of the five pounds, we say there is no five pounds finding, it would have been 20 years, zero to 20 years. Didn't Blakely and Booker sort of change that? They did. And then it said, well, no, only if the jury finds the quantity or there's been an admission. And with regard to the first two defendants, Mr. Duarte Cruz as well as Mr. Labrada Bustamante, there was testimony. There was an admission by the defendants. Let's take that, their cases. Would they still be entitled to go back to the sentencing judge and say, okay, maybe I admitted this amount, but, and, you know, putting aside the arguments they really didn't admit it totally, but let's say that you have discretion and there are other things that we want to say to you or would have said to you. And so you should take another look at it. Why, and I realize this is up in the air with Ameline pending in terms of our general approach, but why shouldn't someone in that position get to make their pitch before the sentencing judge in a discretionary system? Well, weren't they afforded that right the first time around, really, to say? Well, except the judge thought it was a mandatory system. Yes. And that was based on that quantity. But the Court's looking at the guidelines that apply to that quantity and taking all of the factors, some of which are still valid law, the sentencing factors that have not been deemed unconstitutional. But couldn't the judge now under Booker say, I'm looking at all these factors, they're all great factors, but I have discretion now, according to the Supreme Court, and I just feel like giving lower sentences than the guidelines say? I think for the Court to make that finding, there needs to be some showing on behalf of the appellants. Well, let's say the judge says, looking at the purposes of sentencing under 18 U.S.C. section 3553, I give a lot of weight to such and such, you know, one of those points in there. And that leads me to want to sentence lower than the guidelines. Well, I think for the Court to make that finding, it needs to find that there's a plain error, that there's substantial rights of the defendant at issue here. Back to that issue of isn't that test under, well, maybe Ameline doesn't count now because it's in bank, but that test is going to require us one way or another to look at whether there's a reasonable probability that the sentence would be different. I think, again, I think this Court would have to speculate as to what that basis would be. But what more do we need besides the judge saying on the record, these are really long sentences because of the quantity that's involved here, and I don't like this, but my hands are tied, and here it is, guys. Well, I think that there needs to be some showing by the defendant in the appellate process. But what more? Would the showing have to include the further statement that, and if it were up to me, I'd give you half the sentence that I believe the guidelines require me to impose? Is that what you're? What I would suggest to the Court is some showing by the defendant that there would be a good basis for the Court to find that the sentence that was imposed wasn't reasonable under the circumstances. And I don't think we have that on the record before this Court. I don't think we do. But how can we expect the defendants to have made a record for a discretionary system when, at the time of their sentencing, the guidelines were mandatory and the judge couldn't depart except pursuant to Coon and couldn't consider certain things under the guidelines that perhaps a district court now could consider? Well, if that's true. And they didn't have the opportunity to present those reasons, perhaps, while this was in the pipeline, while this was pending before this Court. However, I think that because of the broad scope of downward departures, and there's been so many decisions and so many different bases found as legitimate bases that the Court could decide in its discretion not to depart from. Well, clearly he could now. I don't think anybody disputes that. The question is, I guess, if plain error applies, whether in order to preserve the appearance of fairness of the system, we ought to give these defendants another look by the sentencing judge, given his statements of misgiving at the time that he imposed the sentence. That's a very important question. And I've had several cases that have come before this Court where I have stipulated with the defendant's appeal, and we said, okay, let's send it back. Let's have the Court reconsider this in light of Booker. I think this is a little bit different because we're so well-developed. I'm not suggesting the government's position is unreasonable. I guess I'm just asking, what more does the defense have to show? And given the change in the law, that this is maybe one of those cases where we've got to give Judge Shea another crack at it. Well, I think that this is a very developed record. I think there was plenty of opportunities for recommendations to the Court that would have been then fair for before this Court in deciding whether or not it was a reasonable sentence. One of the challenges is, and this is an equal problem for the government and for the appellants, that we do have Ameline pending in bank. It is going to issue someday. It's going to set some standards for, I think, for how we normally are supposed to handle these kinds of situations. And it would be nice if we could let everybody argue their case after that, which I suppose we might do if we have a question about it. I'm not sure if we could call for supplemental briefing to let everybody be heard as to where they stand in light of the end bank Ameline. But at this point, I'm not sure how far we can go with it. Well, if I can add anything to that, I would suggest to the Court that the existing framework under the guidelines provided many bases upon which to depart. Depart. I'm saying the judge could have departed under many different theories had he wanted to do so. That's right. And they really were not set forth by the appellants. Justice, do I understand your argument to be that defendants had the same incentive to put forth any mitigating evidence previously that they have now that Booker and all of the other cases have come down? Is that pretty much your argument? It is. We hear and face all the time a combination of circumstances is a basis for a downward departure. And every combination, family circumstances, comes up most routinely in my practice with immigration cases where we're dealing with so many different factors that impact sentencing. And those have always been there and they've always been available, and they just were not set forth in any fashion other than the issue of the safety valve application. I just don't think they were set forth in this case. Ms. Bolton, could you address the argument made by Mr. Swanberg regarding Mr. Gallardo 's failure to make any admissions? You did not argue the Pinkerton theory. That's right. And that's a very good theory, and I wish I had thought of it, Your Honor. It's certainly what I think of when I prosecute conspiracy cases. The framework, I guess, that I was envisioning the case was the Blakeley case, which talked about admissions by defendants for the purposes of sentencing enhancements. And he did make an admission. He didn't testify. Yeah. I, as one judge, I'm not sure it's such a great theory as my colleague. Well, just because I asked the question doesn't mean I think that that's the answer. I just want to know what your answer to my question is. I think it's a good theory. Pinkerton does let an admission by one be used against another. But whether that would apply in the context of the Sixth Amendment issues under Booker, you know, I don't know. I guess we'd have to – a lot of people would have to think about that one. Right. And I – What about your – you have to get your cross appeal at some time. Yes. I think ultimately the issue in Beranda-Gallardo doesn't really need to be decided because there was a statutory mandatory minimum that was applicable in this case. And the court, the district court in this case, just missed the law. With all due respect to Judge Shea, he missed the law, and he didn't follow it correctly in making his decision. And he also didn't make – even if we assumed that the law that he used was correct, which it wasn't, he didn't use the facts or the actual substantive argument didn't make any – didn't fit with the underlying law. The government cited kind of at the last minute at the sentencing hearing – we didn't brief it before sentencing – but the case of Custis v. United States, which set some prior convictions that are used to enhance a sentence pursuant to – in the Custis case, it was an issue of the armed career criminal enhancement. Judge Shea seemed to think that it made a difference that, in fact, it was – Custis case pertained to the armed career criminal. But this Court said it really applies to this kind of a case, the case of Mr. Beranda-Gallardo as well. As this Court said, in both Fondren and Burroughs, you are prohibited from making a collateral attack if it's on a basis other than a Sixth Amendment right to counsel challenge. And that wasn't the basis for the challenge in this case. In this case, the defendant argued at sentencing that because he was not explained the elements of the offense at his change of plea hearing, that that was an unconstitutional sentence. And there's really no legal authority to support that finding. The Court did make that finding. So essentially, there is also the additional factor of the statute of limitations on collateral attacks to prior convictions. Under 21 U.S.C. 851, the – there's a five-year statute of limitations under subparagraph E. Doesn't that 851E just basically mean that we – that a collateral attack can't be made on anything older than that unless it's something like an uncounseled case? Exactly. That would be the limited exception that I think Custis recognizes, although I think it's somewhat unclear from that, that statutory language just says if it's older than five years, there's no collateral attack. On – in this particular case, we filed our notice of the prior conviction in August of 2003. The conviction was from 1997. That was really the crucial prior conviction because that was the prior conviction that gave him criminal history points and made him ineligible for application of a safety pelt. So essentially what the Court did is it allowed this prior collateral – or this collateral attack on the prior conviction despite the Federal law to the contrary. The district court specifically relied on U.S. v. Smith and U.S. v. Bruce, which are completely different cases the government would submit. They were direct appeals. They were not collateral attacks on prior convictions. And they concerned the adequacy of a plea under the Federal rules of criminal procedure, not the State rules which were applicable in this case. This was a State of California conviction. So we think the Court just entirely missed the point on permitting this collateral attack and finding a constitutional infirmity based on not advising of the elements of the charge, when, in fact, there is no constitutional requirement that a defendant be advised of the elements before pleading guilty and having that be a lawful conviction. The – So let me make sure I understand. Are you acknowledging that there is a Gideon exception to the 5-year collateral bar or no? I don't think I'm doing that. I think the statute – I think the Court should rely on the statute. And it says 5 years, you don't get to collaterally attack. Custis recognizes it in the context of an armed career criminal case, which is – which this Court has found indistinguishable from a case like this. But I think the statute – You don't have to decide in this – we don't really have to decide in this case whether there's an uncounseled Gideon-type exception to the 5-year limitations because that issue is not presented in the challenge, right? It's not. So all we have to do is decide if a – if a – the type of challenge that was made here by collateral attack to the district court could be made beyond 5 years. Right. That's right. The other issues raised by the defense, which I'll just touch on briefly, and I'll reserve a few minutes here. You can save a minute or two for a rebuttal argument on the – on your appeal. I will, Your Honor. Just briefly, there was the discussion of effective assistance of counsel. We would submit to the Court that that – this is not the proper venue for consideration of that issue. The record wasn't fully developed on the issue of counsel's effective assistance, and we submit the Court shouldn't consider. If the Court does consider it, though, what I would point out to the Court is that, in fact, the objections that the defendant, and this is Labrada-Bustamante, raises as – as concern about his counsel's performance, they were – were actually raised at the sentencing hearing, and the judge did consider them. So why wouldn't that enable us to do a prejudice analysis? Why wouldn't the record be sufficiently developed then to allow us to do a prejudice analysis? Well, I suppose on the theory put forth by the defense that there's something else that maybe should have been done that wasn't done, or by putting things in writing – excuse me – it would have been more developed for the Court, and the Court might have been more favorable in its reply or response to the objections. However, it seems like it was considered by the Court, the two issues that were raised. Perhaps the Court can consider it on that basis, but whether or not the record's fully developed, I think, is unclear with what's before the Court right now. I think that covers all the issues, and I'll reserve the rest of my time for rebuttal. Thank you. Now, for the appellants and the cross-appeal appellee, we're going to – I'm going to add some time, because these conspiracy cases are difficult. Each of you has a different client, and I think let's just – we'll give you each of Mr. Egan and Mr. Markey three minutes, if you need it, and we'll give five minutes to Mr. Swanberg, because he has the burden of dealing with the cross-appeal. So don't use more – don't use three minutes if you don't need it, but if you need it, you've got it. Thank you, Judge Gould. Judge Shea, when he sentenced Mr. Duarte, Cruz said that, I reluctantly find that the safety valve does not apply. His reluctance was based upon the fact that he was giving 151 months rather than what I would suggest was the appropriate sentence somewhere in the range of 63 to 78. In order to get to the 63 to 78, you need to get to the safety valve, and you need to have less than five pounds. I follow Judge Tallman's logic. The admission was not we are conspiring to deliver five pounds. The admission was we said we're conspiring to deliver five pounds, but we were just kidding. Judge Tallman points out the jury didn't think you were kidding, but the jury didn't think you were kidding only to the extent, based upon their verdict, only to the extent of 50 grams. Or more. Or more. And five pounds is more than 50 grams. By a bunch. And there's nothing else in the record besides five fingers, five pounds. Well, I don't think there's anything else. It would be sheer speculation that it would be anything other than five pounds. That is true, Judge Tallman. It is probably speculative to say that it's something other than five pounds, but I think on the same hand, if you don't get an explicit answer from the jury, if they don't pick the number, then it's speculative also. But you're reading that clause right out of Apprendi, the clause that says other than the fact of a prior conviction and admissions by the defendant, no fact, not otherwise found by the jury that increases the sentence, blah, blah, blah. So you're asking us to ignore the clause that says admissions by the defendant. No, sir. I'm asking. I don't think that the admission by the defendant can be said that it was an admission that there was actually five pounds, that the real facts of this are that there are five pounds. That's my interpretation. I understand your argument. It's a good lawyerly argument, Mr. Egan. And where angels fear to tread, I'd like to go back in without having ever read Rodriguez-Preciado. I would like to point out that Judge Shea did not actually come to a finding of fact that there was a waiver. In his order denying the defendant's motion to suppress the statements, at least in the case in chief, Judge Shea made a finding that, in fact, the defendant knew that there was Miranda rights and that he had those rights, but he never came to the explicit conclusion, never found as a fact that. And that's on the supplement. No, it's on the excerpts on page 9 of the excerpts of the proceedings. Thank you. Thank you, Mr. Egan. Mr. Markey. And we're going to give you up to three minutes as well, if you need it. I'll be very brief, Your Honor. In response to the government's position that in order to have the matter remanded for discretion on sentencing under Booker, the government said, well, we have to the defense has to prove something, the appellants have to prove something that would show that it would change if it were sent back. And I believe Judge Dahlman said, well, what if the judge said, I don't have discretion here? In this case, in Mr. Labrada's case, Judge Shea said, and I quote from page 98 of our excerpts, well, I don't think there's anything else that can be done here, Mr. Labrada, except 151 months. So Judge Shea was saying, under the guidelines, there's nothing he can do. So I'm saying that as a matter of discretion that the matter can be and should be remanded, and that Mr. Labrada has proven that fact by the judge admitting on record there's nothing he can do based on the guidelines. That's all I would have to add, Your Honor. Thank you. Okay. Let's set the clock, please, at 5 minutes. Mr. Swanberg, again, you don't you don't you're not required to use 5 minutes, but you're welcome to do it because you've got the cross appeal to deal with as well. And specifically just dealing with the cross appeal, Your Honor, I guess technically you have to look at this from the fact that Judge Shea did not allow a collateral attack as to 851 itself. In other words, he didn't say, I'm going to overrule 851e and I'm going to allow a collateral attack past 5 years. Instead, what he did is said, I'm not going to I'm not going to I'm going to look at this for purposes of whether I'm going to include it under the sentencing guidelines for purposes of criminal history. How does that differ from a collateral attack? Well, Your Honor, I can't distinguish. It is still a collateral attack. It's just not under 851e. So I guess the issue becomes whether or not it's allowable under the guidelines, and it's cases that were cited by the government. I can't contest that. But the statute would control, would it not? I don't understand how the guidelines could trump the statute. The government gave notice that it was proceeding under 851. 851 sets forth your obligation to file objections prior to the imposition of sentence. This was a statutory proceeding, was it not? It was, Your Honor. I just wanted to point out to the technical, I think we were talking about whether or not 851 allowed him to go past 5 years, and that's not what he did it under. And I grant, I have to concede that the case law from this court following basically was that the sentencing guidelines themselves did not allow an independent means of collaterally attacking this. But your argument would have to be that somehow the guidelines trump the statute, and that can't be right. Well, they would have only trumped it in so far as if the collateral attack would have been allowed, in other words, for the purposes of safety valve. If the safety valve would have applied, it's not trumping the statute. It's allowing something under the statute. Well, the statute is very clear. If the statute applies, then the court must impose under 851F or whatever it is, a mandatory 20-year sentence. My understanding is unless the safety valve can be applied. The safety valve allows you under the mandatory minimum. Then your argument is that the sentencing guidelines trump the statute. Well, to that extent. I'm not aware of any case law that says that. That is my understanding, Your Honor. So I'd have to stand on that proposition, not that it trumps it. The problem with ACCA or the continuing offender statute under 851 is if it applies, it sets a mandatory minimum. We don't need sentencing guidelines to know what the floor is going to be. And I guess the only other proposition that I don't know how to answer that, Your Honor. I don't have a response. I mean, I think that is the answer, unless you've got a case that says otherwise, and I don't think it exists. The only other thing I'd fall back on, and I don't know how this applies in regards to what Your Honor is pointing out as well as in the case of Booker, I'm not sure whether or not that will allow the Court any jurisdiction here or authorization either. I think at least the Court should have that chance to look at it. I don't think that issue is right before this Court at this point in time. In other words you think the district court should be allowed to look at whether in light of Booker the Court can make some discretionary exception to the statutory minimum. Yes. Yes, Your Honor. My understanding, my understanding is the fact that the safety valve would have applied. The government is arguing the safety valve wasn't appropriately applied. But if the safety valve was allowed to be appropriately applied, then under the guidelines, without violating the statute, the Court can come under what the statutory minimum would have been. Well, under the guidelines themselves, with this prior conviction counting as three points, the guidelines said that you can't apply the safety valve because that's too many points to have for purposes of applying it. Well, under Booker now with these sentencing guidelines only being advisory, not mandatory, I think an argument could be made. I don't know whether it's a good argument or not, but an argument could be made at least that therefore the safety valve provision of the guidelines are also discretionary and that a Court in looking at whether or not to apply a safety valve is also discretionary. But doesn't that weaken the argument that you just made at the start, which is that somehow the safety valve provision trumps Section 851? Well, Your Honor, I guess it's a fallback position. If you acknowledge that they're discretionary rather than mandatory, that weakens the force of your argument. I guess, Your Honor, I think it's a fallback position. I don't know what this Court is going to do. But what my position is, is that this Court is defined that what the trial court did here was not authorized. In other words, that the guidelines themselves, under the mandatory provisions of the guidelines, that the safety valve was not allowed to be appropriately applied under the rules, the mandatory rules, and therefore sends this back to the trial court for re-imposition of sentence. But I think it also needs to allow the trial court to take a look at whether or not based on Booker the court can review whether or not the safety valve provision is an only discretionary for purposes of whether the court wants to find that it still wants to apply the safety valve provision. Well, how can you tell the court what the answer is? I mean, that's a pure legal question that we can easily decide. And if we decide to remand, we can give the district court instructions on remand as to the answer to that question, can't we? I assume the court could, Your Honor. I just think that maybe it's decided. I don't know what Judge Shea would do with it on remand. I don't know if he'd even – Well, I mean, if we can decide it now, what promotes judicial efficiency by sending it down, asking the district court to decide it, and then hearing another appeal because you don't like the way he answered the question. No, I don't think there's a lot of – I guess the court could make the decision. There's just not a lot of case law on it yet. If the statute applies, it applies.  That's not going to be my position, Your Honor. Your position is that even if the statute appears to apply, that the district court should be allowed to consider whether Booker changes that in some way. Yes. And that we shouldn't address the issue kind of on a cold record without the benefit of letting the district court make a first cut at the problem. Exactly. Thank you for opening it so well. I understand your position. Well, thank you very much, Justice Albrecht. I want to start off with this cross-appeal of the government. The government's position is that absolutely not. If it's a statutory mandatory minimum, that applies, and Booker has no impact. Booker says that when you're considering factors under the guidelines system, then you have some discretion. You're not bound by those guidelines. A statutory mandatory minimum trumps the guidelines. And prevails in this issue completely. There is no – if this goes back to Judge Shea, and this Court holds that the statutory minimum applies, and the bases upon which you found that it didn't apply were wrong, then the judge cannot say, well, okay, so the statute applies, but under Booker, I get to still go underneath it. And the government completely disputes that position and would submit to the Court that that would be erroneous under the Booker decision itself. So you're suggesting it would be a very clean remand. We send it back and say the statute applies. You have to impose a mandatory 20-year minimum. The collateral attack was error. Resentence the defendant. Yes. So the position that Mr. Swanberg's urging would take something beyond Apprendi, Blakely, Booker. That would be a whole new area of law that's not. It would take another step. It would take another step. I think it would also be essentially in violation of Booker, which says that the – which ruled on the guidelines and that they're not binding. You can separate them out, and we can find this one provision of the statute that pertains to sentencing unconstitutional. The statutory maximum could continue to apply, and they will, I think, under the current framework of guidelines together with statutory mandatory minimums. On the bigger issue in the other two cases of the sentencing, and, well, did the court or should the court be given the opportunity to review these issues under the Booker reasoning? In other words, should the court be entitled to say, look, these guidelines don't bind me, so I might view this case differently now. For example, as has been demonstrated in this court case, there's no – we found no drugs. So we don't think – you know, the judge may say I don't think the guidelines are really that sensible. Well, I think that to do so and to permit that in these kinds of cases just throws out all of the history and the good sense that come with the years of sentencing litigation under the guidelines. But that's an argument that, let's say Judge Shea on remand decides, I'm going to give him credit for time served. That's good enough. And I think that's a reasonable sentence. You're going to be back up here saying that was an unreasonable sentence. That may be the position of the Solicitor General. I'm not sure if that's something we would want to take or not. But I think that to do so and to permit district – to send it back to district courts that have otherwise made very reasonable sentencing decisions under the existing framework of the guidelines. So didn't Booker contemplate that, that some sentences would be remanded, particularly where the judge indicated that his hands were tied by the guidelines? Wouldn't that be an ideal candidate for letting the judge take a second look at it? I think so. But I think what we have here, too, is we have a specific drug quantity admitted by both of the defendants at issue on the Booker issue. And we have a guideline framework. And we have nothing raised by the defendants other than the safety valve issue, which the Court rejected because both of the defendants testified and the jury found their testimony not believable. I don't think we've ever had an assistant United States attorney or a Department of Justice official who's urged that we should make a Booker remand under plain error, as far as I can – I've seen a lot of these cases. I'm sure not as many as my colleagues, but I've never seen anywhere the government's acknowledged that as a possibility, although it seems like it would be a pretty distinct possibility under Booker. It is definitely a distinct possibility. And under Booker, what I'm suggesting to the Court is that the Court – the defendants have the opportunity to raise – I was just trying to encourage you to take a bold step and send a message to Washington, D.C. No, I'm not – I don't have that much authority, Your Honor. I think she's acknowledging that plain error hypothetically exists. She's just not seen it. That's what I was saying. I understand. No, I understand your argument. Thank you. It's very difficult. And I feel like I should apologize on behalf of the Court for the fact that you're all being asked to argue this without having the final amyling decision. But eventually it will come out, and if we feel it would be helpful to hear from the government or to hear from the appellants on the implications of that for their briefings. Okay. We thank you all. This case shall be submitted. Excellent arguments.  Travel safely back. Thank you.
judges: Gould, Tallman, Rawlinson